DEBORAH K. DUFFEY, Plaintiff Appellee v. ROY G. DUFFEY, Defendant Appellant

No. 9312DC147

(Filed 18 January 1994)

1. **Divorce and Separation § 386 (NCI4th)— support for stepchildren—voluntary extension of in loco parentis status**

By signing a separation agreement in which he agreed to pay child support to plaintiff for his stepchildren, defendant voluntarily and in writing extended his status of in loco parentis and gave the court the authority to order that support be paid. N.C.G.S. § 50-13.4.

**Am Jur 2d, Divorce and Separation §§ 1018 et seq.**

2. **Divorce and Separation § 408 (NCI4th)— child support for stepchildren—natural parents primarily responsible for needs— stepfather secondarily responsible for deficiency**

Competent evidence existed in the record to justify a reduction in the amount of child support; however, the trial court erred in holding defendant primarily liable for the child support for his stepchildren, since N.C.G.S. § 50-13.4(b) clearly states that even if an individual assumes the status of in loco parentis, he shall still be secondarily liable to the child's natural parents for the support of that child; therefore, this case is remanded for a determination of the stepchildren's needs and the ability of their natural parents to meet these needs. Should the needs exceed the ability of the natural parents to meet the needs, only then should defendant be responsible for the deficiency.

**Am Jur 2d, Divorce and Separation §§ 1037, 1038.**

Appeal by defendant from order entered 9 December 1992 by Judge James Floyd Ammons, Jr. in Cumberland County District Court. Heard in the Court of Appeals 3 December 1993.

*Bruce Allen for defendant.*

*Hedahl & Radtke, by Debra J. Radtke,. for plaintiff.*

LEWIS, Judge.

The issue presented by this appeal is the extent, if any, to which defendant is liable for the support of his two stepchildren. The facts show that plaintiff and defendant were married in Vicenza, Italy on 4 September 1980. At the time of the marriage, plaintiff had a child from a previous marriage, Derissa Collins ("Derissa"), and at all times pertinent to this appeal Derissa has resided with the parties. In addition to Derissa, two natural children were born of the marriage, Roy Gene Duffey ("Roy") on 28 November 1980 and Jacqueline Nicole Duffey ("Jacqueline") on 24 November 1982. During the marriage, plaintiff also gave birth to Dominique Duffey ("Dominique") who was conceived while defendant was away on military duty, but born when defendant returned. Although defendant is listed as Dominique's father on her birth certificate, it is undisputed that he is not her natural father.

Though plaintiff and defendant had a turbulent marriage, defendant, in an effort to make his marriage succeed, began adoption and legitimization proceedings for Derissa. However, these proceedings were never completed. While defendant was in Saudi Arabia as part of Operation Desert Storm, another man moved into defendant's home, and the children began calling this interloper "daddy." When defendant returned from Saudi Arabia, he refused to accept this adulterous behavior and separated from plaintiff in February or March of 1991. Unable to afford an attorney, defendant drafted a Separation Agreement with legal assistance from the base Judge Advocate General's Office. Several drafts were exchanged and reviewed prior to the final version which was signed on 23 October 1991. The final version of the Separation Agreement provided that Roy and Jacqueline were born of the marriage and that custody of these two children would be with defendant. In addition, the agreement provided that plaintiff would have custody of the two children not born of the marriage and that defendant would help with their support. Defendant expressly agreed to pay plaintiff child support in the amount of $250.00 per month for each child for the first year following the dissolution of marriage and then $175.00 per child for each month thereafter.

A Judgment of Absolute Divorce was entered on 13 December 1991, incorporating the parties' Separation Agreement. Defendant subsequently moved to set aside a portion of the Judgment of Absolute Divorce on the basis that it was erroneous and void. Defendant also filed a motion in the cause seeking child support from plaintiff and a modification of plaintiff's visitation privileges. A hearing was held on 29 October 1992, before Judge Ammons, who, after hearing the evidence and arguments of counsel, entered an order requiring defendant to pay child support of $302.00 per month for his two stepchildren. The order also required defendant to pay $3,500.00 in back child support to plaintiff at a rate of $100.00 per month. It is this order from which defendant appeals.

[1] In his motion to set aside a portion of the Judgment of Absolute Divorce, defendant relied upon Rule 60(b)(1), (b)(4) and (b)(6). These provisions allow for relief from judgment due to:

(1) Mistake, inadvertence, surprise, or excusable neglect; . . .

(4) The judgment is void; . . . or

(6) Any other reason justifying relief from the operation of the judgment.

A motion under Rule 60(b) is directed to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Cole v. Cole*, 90 N.C. App. 724, 370 S.E.2d 272, *disc. rev. denied*, 323 N.C. 475, 373 S.E.2d 862 (1988). In this case, defendant claims that he is entitled to relief because the trial court erred in interpreting the provisions of the parties' Separation Agreement and because the trial court's order requiring him to pay support for his stepchildren is void as against public policy. In order to determine if the trial court abused its discretion we must first analyze the underlying issue of whether defendant is required to pay child support for his stepchildren.

In North Carolina, there is no duty for a person to support stepchildren. As stated in *State v. Ray*, 195 N.C. 628, 629, 143 S.E. 216 (1928), "the [law] does not impose upon a husband the burden of supporting another man's offspring." However, one can become liable for the support of stepchildren by placing himself in loco parentis to those children. *In re Dunston*, 18 N.C. App. 647, 197 S.E.2d 560 (1973). The term "in loco parentis" has been defined by this Court as a person in the place of a parent or someone who has assumed the status and obligations of a parent

**DUFFEY v. DUFFEY**

[113 N.C. App. 382 (1994)]

without a formal adoption. *Shook v. Peavy*, 23 N.C. App. 230, 208 S.E.2d 433 (1974). This status has been officially recognized by statute in N.C.G.S. § 50-13.4, which provides in pertinent part:

> (b) In the absence of pleading and proof that the circumstances otherwise warrant, the father and mother shall be primarily liable for the support of a minor child, and any other person, agency, organization or institution standing in loco parentis shall be secondarily liable for such support. Such other circumstances may include, but shall not be limited to, the relative ability of all the above-mentioned parties to provide support or the inability of one or more of them to provide support, and the needs and estate of the child. . . . However, the judge may not order support to be paid by a person who is not the child's parent or an agency, organization or institution standing in loco parentis absent evidence and a finding that such person, agency, organization or institution has voluntarily assumed the obligation of support in writing.

Applying the applicable law to the facts of this case, the trial court found that defendant had voluntarily assumed an obligation of support for Derissa and Dominique and that he stood in loco parentis to these two stepchildren at the time of the execution of the Separation Agreement. We agree.

All the evidence shows that defendant voluntarily accepted Derissa and Dominique into his home and that he acted as a father to his stepchildren. Defendant cared and provided for his stepchildren by supplying them with military identification and listing them as his dependents. Thus, there is no doubt that defendant stood in loco parentis to Derissa and Dominique during the term of his marriage to plaintiff.

Typically, the status of in loco parentis terminates upon divorce. *See* Mary E. Wright-Hunt, *Equating A Stepparent's Rights And Liabilities Vis-A-Vis Custody Visitation And Support Upon Dissolution of The Marriage With Those Of The Natural Parent*, 17 N.C. Cent. L.J. 1, 6 (1988). However, in this case we find that defendant has voluntarily extended his status beyond the termination of the marriage. By signing the Separation Agreement in which he agreed to pay child support to plaintiff, defendant voluntarily and in writing extended his status of in loco parentis and gave the court the authority to order that support be paid. This is all that is required by the express terms of N.C.G.S. § 50-13.4(b). Although defendant

claims that this is an erroneous interpretation of the Separation Agreement, we are not persuaded.

Defendant has asserted in his brief that his agreement to pay child support was only in the event that he did not get custody of his two natural children. This assertion is farfetched, and defendant's own actions do not support this interpretation. The record reveals that several drafts of the Separation Agreement were exchanged before the final version was agreed upon. All of the prior drafts referred to the children in a manner as to include both the natural children of the marriage as well as Derissa and Dominique, defendant's stepchildren. As further evidence that this was the construction intended by the parties, we note that defendant paid support for all four children while they were in plaintiff's custody. In addition, the parties' Separation Agreement gave defendant visitation privileges with Derissa and Dominique. Therefore, it is only logical to conclude that defendant voluntarily undertook the obligation to pay child support to plaintiff for Derissa and Dominique and the trial court did not err in so finding. Having determined that defendant stood in loco parentis to his stepchildren and voluntarily extended this obligation, we find no error in the trial court's denying defendant's motion to set aside the Judgment of Absolute Divorce.

Typical of most separation agreements, plaintiff's and defendant's agreement contained a clause seeking to have the agreement incorporated into the divorce decree. The record reveals that the parties' Separation Agreement was in fact incorporated into the Judgment of Absolute Divorce. Because the parties' agreement was incorporated, the trial court was not bound by the amount which defendant agreed to pay but was free to modify the amount of child support in the event of changed circumstances. *See* N.C.G.S. § 50-13.7(a); *In re Register*, 303 N.C. 149, 277 S.E.2d 356 (1981). In determining what constitutes a change of circumstances, courts look to those circumstances relating to child oriented expenses, *see Greer v. Greer*, 101 N.C. App. 351, 399 S.E.2d 399 (1991), as well as to the welfare of the child. *Wehlau v. Witek*, 75 N.C. App. 596, 331 S.E.2d 223 (1985). By incorporating the parties' Separation Agreement into the original Judgment of Absolute Divorce, the court essentially found that the amounts contained in the Agreement were reasonable at that time. *See Allen v. Allen*, 7 N.C. App. 555, 173 S.E.2d 10 (1970). Thus, for defendant to prevail in

DUFFEY v. DUFFEY

[113 N.C. App. 382 (1994)]

his request for a modification in the amount of child support, he must show a substantial change in circumstances. *Id.*

[2] In this case, defendant originally agreed to pay $175.00 per stepchild per month. However, the trial court felt justified in ordering a reduction in the amount of child support because plaintiff had failed to obtain satisfactory employment and was presently unemployed. The trial court thus imputed a minimum wage income to plaintiff for the purpose of determining the extent of her contribution. Given that the trial court is vested with broad discretion in custody and support matters, *see Best v. Best*, 81 N.C. App. 337, 344 S.E.2d 363 (1986), we defer to the judge on the front line and conclude that competent evidence exists in the record to justify a reduction in the amount of child support. However, as to the amount of child support ordered we are unable to give the trial court the same deference.

Typically, the amount of support awarded is directed to the discretion of the trial court and absent an abuse of discretion will not be disturbed on appeal. *Boyd v. Boyd*, 81 N.C. App. 71, 343 S.E.2d 581 (1986). However, in this case we find an abuse of discretion. After imputing an income of $731.00 per month to plaintiff, the trial court used the Child Support Guidelines for split custody to determine that defendant was required to pay plaintiff $302.00 per month. This was error. N.C.G.S. § 50-13.4(b) clearly states that even if an individual assumes the status of in loco parentis, he shall still be secondarily liable to the child's natural parents for the support of that child. By using the Child Support Guidelines, the trial court equated the duties and obligations of defendant with those of the natural fathers of Derissa and Dominique. If we are to impose the same obligations and duties on a stepparent, then it is only fair to confer the same rights and privileges, such as visitation and custody, to a stepparent. However, to do so would necessarily interfere with a child's relationship with his or her noncustodial, natural parent. Clearly this is not what the legislature intended.

This is not the first time that the legislature has imposed secondary responsibility on a party for the support of a child. Prior to its amendment in 1981, N.C.G.S. § 50-13.4 imposed secondary liability on a mother, only after the father was unable to meet his primary duty of support. *Plott v. Plott*, 313 N.C. 63, 326 S.E.2d 863 (1985). Applying this prior law in the case of *In*

*re Register,* 303 N.C. 149, 277 S.E.2d 356 (1981), the Supreme Court remanded on the issue of support because there were no findings as to the ability of the father to pay support. On remand, the Supreme Court directed that if the child's needs exceeded the ability of the father to pay, then the mother must pay according to her ability. Using this as guidance, we remand the issue of support to the trial court for a determination as to the needs of Derissa and Dominique, and the ability of their respective natural parents to meet these needs. Should the needs of Derissa and Dominique exceed the ability of their natural parents to meet those needs, then and only then is defendant secondarily responsible for the deficiency.

On the issue of the arrearage we find no error. Having construed the Separation Agreement to provide for support for Derissa and Dominique, the trial court was correct in ordering defendant to honor his contractual obligation to pay this support. Our opinion in no way lessens defendant's responsibility for paying this arrearage. The relief granted by this opinion is prospective only from the time of the filing of the motion in the cause.

We have carefully considered defendant's remaining assignments of error and find them to be without merit. Accordingly, the judgment of the trial court is

Affirmed *in part and* Remanded *in part.*

Judges ORR and JOHN concur.