MILLIE C. BESHORE *v.* LINWOOD L. BESHORE

[No. 225, September Term, 1973.]

*Decided November 30, 1973.*

The cause was argued before GILBERT, MENCHINE and LOWE, JJ.

*Harold Buchman,* with whom was *David N. Kuryk* on the brief, for appellant.

*Barbara Kerr Howe,* with whom were *Kerr & Kerr* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

This is an appeal by Millie C. Beshore, (now remarried and known as Millie C. Eubanks) mother of four infant children, aged 12, 8, 6 and 5 years, (mother) from an order altering the terms, and suspending the effect, of a prior decree making provision for their support by their father. The prior decree passed by the Circuit Court for Baltimore County on October 12, 1971 had ordered Linwood L. Beshore, Jr., father of the children, (father) to pay $60.00 weekly, through the Probation Department for the support of the infant children. That decree also had granted a divorce *a vinculo matrimonii* to the father but had awarded custody of the four children to the mother.

On August 16, 1972 the mother filed a petition under oath alleging: (a) that subsequent to the decree she had married a member of the Armed Forces of the United States; (b) that her husband was about to be transferred to Germany for three years; (c) that although she acknowledged that the father would be inconvenienced by movement of the children to Germany, there was no alternative to taking the children with her to Germany. She further alleged that the father's income would permit visitations by him. An order appended to the petition authorized the father to show cause on or before August 30, 1972 why the court should not "pass an order authorizing the children to live with petitioner in Germany, with the right of reasonable visitation to the father."

Service of the petition upon the father was had, with no answer filed by him.

Thereafter, on October 16, 1972 an order was passed authorizing the mother "to remove their four infant children from this jurisdiction and establish a new domicile in Germany with the right of reasonable visitation to the

476

defendant father." No appeal from that order was taken by the father.

On November 17, 1972 a petition was filed by the mother, alleging accrued arrearages then totaling $600.00, resulting from non-payment of the sums ordered by the decree, and seeking to have father held in contempt.

Father filed a motion raising preliminary objection, alleging that jurisdiction had been lost by passage of the order of October 16, 1972. Appellant, through counsel, answered that motion. The trial judge by letter notified counsel that he would "hear the matter of contempt and motion raising preliminary objection * * * on February 14, [1973]." At the hearing appellee appeared in person and by counsel; appellant appeared by counsel only. At the outset of the hearing, the following colloquy occurred:

"THE COURT:   Is this up on both the Contempt Citation and the Motion Raising Preliminary Objection?

MRS. HOWE:   If Your Honor pleases, I would say it's only up on the Motion since we never filed an Answer to the Contempt Petition or Show Cause Order. When Your Honor called and said that the hearing today was to be both on the Contempt Citation and on the Motion Raising Preliminary Objection, I brought Mr. Beshore with me today. As I said he has as yet not officially or formally filed any kind of Answer to the Petition that was filed presently.

THE COURT:   You can't delay a case because you haven't filed an Answer.

MRS. HOWE:   If you file a Motion Raising Preliminary Objection, my understanding of the rules is that that goes first.

THE COURT: No, I'm going to hear the Contempt Citation today as well as the Motion. I'll hear the Motion first, but if I overrule the Motion then I'm going ahead on the Contempt Citation."

After hearing legal argument, the trial judge overruled the motion raising preliminary objection.

Testimony then was taken from Joyce Langhans, of the Support Division of the Probation Department. She testified that the arrearage of payments under the original decree amounted to $1380.00 at the date of hearing, the last payment having been received by the department on September 27, 1972. She testified that the department received no communication from the father although he had been requested to furnish his address and social security number. She said that the department had been informed that the mother and children had gone to Germany but that the only address known to the department at the time of hearing was an A.P.O. number furnished by the grandmother of the children.

Appellee acknowledged that he had been served with mother's petition for leave to take the children to Germany and that he had not answered it. He acknowledged awareness of the requirements of the original decree. He admitted that all payments were halted when the mother left the State. He was "aware that if there is a change of circumstances [he] could petition the court to change its order."

At the conclusion of the testimony of the appellee the trial judge said:

"THE COURT: I'm going to sign an Order suspending payments for the support of these children. I'm going to date it back to October 16, 1972. Your client will have to make up the payments that were

due up to that date. Send notice to the Probation Department.

\* \* \*

And the Order will suspend the effect of the provision of the decree of October 12th for support and maintenance of these children, until such time as the children are returned to the jurisdiction of this Court—no, no, until such time as they are returned to the continental United States.

It just doesn't seem correct to require this man to pay for these children, when as he says he knows they're going to have quarters provided over there, their food will cost substantially less, their transportation over and back is paid for by the government, and they will get free medical care. He can't see the children and can't find out how he could see the children, even if he could afford to go to Europe and see them."

The order appealed from fully implemented the trial court's declared purposes. This appeal followed. We reverse.

In *Gatuso v. Gatuso,* 16 Md. App. 632, 299 A. 2d 113, this Court said at page 633 [114]: " [The chancellor] has no authority, discretionary or otherwise, to rule upon a question not raised as an issue by the pleadings, and of which the parties therefore had neither notice nor an opportunity to be heard." See also *Stewart v. Stewart,* 256 Md. 272, 260 A. 2d 71, wherein the Court of Appeals in an explication of *Bradford v. Futrell, infra,* cited with manifest approval a quotation of the chancellor in *Stewart* (p. 287 [78]):

"It is not for litigants to decide these matters. There are orders that are required to be obeyed, proper orders of the Court, which cannot be amended or modified or abated by the unilateral, voluntary action of one of the litigants."

In *Woodham v. Woodham*, 235 Md. 356, 201 A. 2d 674, it was said at page 361 [676]:

"We think that the chancellor was in error, however, in increasing the support payments to the child from $20 to $50 sua sponte. Appellant, as custodian for the child, made no request for an increase. The court in its opinion simply stated as a conclusion that since the child was older her needs were greater, and that since the support payments to Mrs. Woodham had been terminated, the appellee would now have the primary responsibility for the child's support. No testimony was taken specifically directed to the child's needs, but it was brought out at the time of the hearing that she was earning $12 a week which she was allowed to retain. Of course, the support for the girl is subject to modification, but if it is to be increased there must be some formal request for it, supported by evidence of the necessity for modification of that part of the decree."

Manifestly, there is greater reason to require a formal request for modification of a decree where the amount of support payments for infant children are to be decreased or terminated.

We will reverse the order of February 14, 1973 and restore the operation and effect of the decree of October 12, 1971, without prejudice to a right to apply for modification of the same. If further proceedings are conducted upon remand, they should be carried on in the light of *Bradford v. Futrell*, 225 Md. 512, 171 A. 2d 493, where it was said at page 521 [498]:

" * * * Among his excuses for not making payments, Bradford in his testimony referred to

the fact that Mrs. Futrell was receiving an allotment. Now he seeks to claim a credit for part of these service payments on the basis that his children in effect helped determine the amount of them during the years and that this should relieve him of part of his obligation. He has cited no authority in support of the proposition that a husband should be credited for payments received by a former wife by reason of her present spouse's military service. Moreover, the appellant submitted no evidence to the chancellor showing the monetary value of that part of the allotment which might be allocable to any child or children of his, and thus failed to present any figure which could have served as the basis for a credit, even if the chancellor had been disposed to allow one."

The provisions of Article 26, § 5 and the comments in *Seltzer v. Seltzer*, 251 Md. 44, 246 A. 2d 264, and *Johnson v. Johnson*, 241 Md. 416, 420, 216 A. 2d 914, 917, also may bear upon the issues if further proceedings occur.

### Motion to Dismiss Appeal

Appellee in his brief filed a motion to dismiss the appeal upon the ground that under Article 5, § 7 (e) the appellant was without standing to appeal from a decision dismissing a petition charging appellee with contempt. The easy answer is that the order appealed from did not relate in any respect to the dismissal of contempt proceedings against the appellee. The motion to dismiss is denied.

> *Motion to dismiss appeal denied.*
> *Order of March 2, 1973 reversed, and operation and effect of the decree of October 12, 1971 restored, without prejudice to a right to apply for modification thereof.*
> *Costs to be paid by appellee.*